IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ACZEL CARDENA-SOSA,[1]

    Petitioner,

v.                                             Civil Action No. 3:14cv76
                                               Criminal Action No. 3:03cr31-10
                                               (Judge Groh)

UNITED STATES OF AMERICA,

    Respondent.

## REPORT AND RECOMMENDATION

On July 14, 2014, the *pro se* petitioner, Aczel Cardena-Sosa [hereinafter "Cardena"] filed a Motion under 28 U.S.C. §2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. (Dkt.# 435), in which he variously asserts that his conviction should be vacated and his sentence set aside, in light of Alleyne v. United States,[2] and/or Whitesides v. United States,[3] and Rosemond v. United States.[4] The petitioner further appears to argue that his Motion is timely under 28 U.S.C. §2255(f)(3) pursuant to the recent Supreme Court finding in Rosemond v. United States.

---

[1] Petitioner signs his name variously in the record as "Cardenas-Sosa," "Cardenas," or as "Cardena-Sosa." He is listed in his criminal case and on the BOP's online Inmate Locator as "Aczel Cardena-Sosa." The discrepancies in the spelling of his name in the record were noted by the Fourth Circuit, which chose to use the "Cardenas-Sosa" spelling, used in the parties' briefs. It is apparent from petitioner's criminal docket that he was initially identified on February 4, 2004 as "True Name Unknown, a/k/a Jorge Cardenas-Sosa, a/k/a Jesus Garcia," in a superseding indictment. (Dkt.# 209). It was not until July 23, 2004, that he was identified by the name Aczel Cardena-Sosa. (Dkt.# 268). His PreSentence Investigation Report lists his aliases as "Jorge Sosa Cardenas," "Jesus Garcia," "Gasel Sosa," "Aczel Cardenas Sosa," "Jorge Cardenas Sosa," and "Jesus Garcia Sosa." (Dkt.# 307 at 1 and 3). Accordingly, despite petitioner's having signed his instant motion to vacate as "Aczel Cardenas-Sosa," the "Cardena-Sosa" version of his name will be used here, because that is the version of the spelling of his name on his criminal docket.

[2] Alleyne v. United States, 133 S.Ct. 2151 (2013).

[3] Whitesides v. United States, 748 F.3d 541 (4th Cir. April 8, 2014). Other than to request that his conviction be vacated on the basis of the ruling in Whitesides in one of his prayers for relief, petitioner makes no further mention of the Whitesides case in his petition or memorandum in support. Accordingly, it will not be addressed here.

[4] The undersigned presumes petitioner is attempting to cite to Rosemond v. United States, 572 U.S. __, 134 S.Ct. 1240 (2014), despite having variously and incorrectly cited to Rosemond in his pleadings as Rosemond at 133 S.Ct. 2734 (2013)(the granting of its petition for *certiorari*), and to Rosemond at 134 S.Ct. 373 (the granting of a motion to file Volume 2 of the Joint Appendix under seal), and to Rosemond at U.S. 695 S.Ct. 695 F.3d 1151 (No. 12-895, March 5, 2014), which appears to be a garbled conglomeration of two citations. Nonetheless, in Rosemond, the Supreme Court held that to prove a defendant aided and abetted the use of a firearm during a crime of violence or a drug trafficking crime under 18 U.S.C. § 924(c), the defendant must have had advance knowledge that a gun would be used in the underlying drug trafficking offense or crime of violence. Rosemond, *supra* at 1249-51.

Petitioner's contemporaneously-filed Motion to Appoint Counsel and Motion to Proceed *in Forma Pauperis* were denied by separate Orders entered July 16, 2014.

Upon preliminary review, it appeared that the petition was untimely, having been filed five years, four months, and twenty-five days after the one-year statute of limitations had expired. Thus, pursuant to Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002), the undersigned issued a notice advising the petitioner that his case would be recommended for dismissal unless he could show that his motion was timely. (Dkt.# 451). On September 12, 2014, the petitioner filed his response. (Dkt.# 454). In that response, titled RE: Motion NOTICE OF FACT In Support of 2255 Habeas Regress Under Tolling Due Too [sic] Intervals of Bureau Delay/Hoarding/Transfers/WithHolding [sic] of: Legal Documents and Denial of Library Access for Filing 2255 Motion in a Timely Manner, petitioner argues that "the bureau of prisons [sic] are totally responsible for each dilatory action that caused petitioner to dishonor his petition on filing a Habeas 2255 MOTION," and that the docket should reflect "emergency requests to evidence that tolling circumstances exist," and asserts that

> numerous intervals and delays of the Federal Bureau Prisons [sic] intercepted a number of prison transfers and no proper place for me to receive my Legal Materials or have Access to a Library, e.g., a library that would have allowed me to properly prepare the filing of my 2255 [sic] Habeas Motion.

Dkt.# 454 at 1.

Further, petitioner contends that "he honorably communicated with the court as too [sic] the delay/denial of library/transfer of numerous housing/and without Access to a library in the preparing of his 2255 Habeas for Regress." (Id. at 2).

This case, which is pending before me for review, and report and recommendation pursuant to LR PL P 2, is ripe for review.

## I. Factual and Procedural History

### A. Petitioner's Conviction and Sentence

On June 4, 2003, the Grand Jury sitting in Northern District of West Virginia returned a one-count indictment charging nine co-defendants with Conspiracy to Distribute Narcotics, in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(A) and 846. (Dkt.# 1). Petitioner was not named in this indictment.

On February 4, 2004, after further investigation into a significant drug-trafficking Hispanic organization operating in the Martinsburg, West Virginia area revealed that petitioner was the leader of this organization,[5] a superseding 16-count indictment was returned, naming petitioner, a Mexican alien, then-identified as True Name Unknown, a/k/a Jorge Cardenas-Sosa, a/k/a Jesus Garcia, and one other defendant, and charging petitioner with: Count One with Conspiracy to Distribute Narcotics, in violation of 21 U.S.C. §§846 and 841(b)(1)(A); Count Two, with Conspiracy to Import "Coke," in violation of 21 U.S.C. §§963 and 960(b)(1)(B); Count Three, Thirteen, and Sixteen, Distribution of Methamphetamine, in violation of 21 U.S.C. §841(a)(1), 841(b)(1)(A), and 18 U.S.C. §2; Count Four, Maintaining Drug Involved Premises, in violation of 21 U.S.C. §856 and 18 U.S.C. §2; Count Five, Twelve, and Fourteen, Possession with Intent to Distribute Cocaine Hydrochloride ("coke"), in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(B); Count Six, Seven, Nine and Fifteen, Distribution of Cocaine Hydrochloride ("coke"), in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C) and 18 U.S.C. §2; Count Eight and Eleven, Distribution of Methamphetamine, in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(B) and 18 U.S.C. §2; and Count Ten, Distribution of Methamphetamine, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C) and 18 U.S.C. §2. (Dkt.# 209).

Subsequently, on September 3, 2004, another superseding indictment[6] was returned, adding an additional count against petitioner, Count Seventeen,[7] Reentry of Deported Aliens,[8] in violation of 8 U.S.C. §1326. (Dkt.# 271).

---

[5] Dkt.# 307, ¶46 at 12 and ¶55 at 14.

[6] Although in fact a second superseding indictment, it was merely titled as Superseding Indictment, and thus, was docketed accordingly. The docket reflects that this (second) superseding indictment contains a Count Eighteen, Conspiracy to

3

On October 15, 2004, petitioner entered into a plea agreement,[9] agreeing to plead guilty to Count 8s, Distribution of Methamphetamine and Count 17s, Illegal Reentry into the United States after having been convicted of an aggravated felony and previously deported. (Dkt.# 275). Nonetheless, on January 14, 2005, petitioner moved to withdraw his plea. By Order entered on April 11, 2005, petitioner's motion to withdraw the plea was denied.

On May 31, 2005, the Court sentenced the petitioner to 444 months on Count 8 and 240 months on Count 17, to run concurrently;[10] to be followed by 5 years' supervised release

**B. Appeal**

On June 8, 2005, petitioner filed a Notice of Appeal. (Dkt.# 311). On appeal, he argued that the district court abused its discretion in denying his motion to withdraw his guilty plea. He sought to withdraw the plea on the grounds that his former attorney had misinformed him as to the possible sentence he faced. Further, he raised various arguments challenging his sentence. By unpublished *per curiam* opinion on May 16, 2007, the Fourth Circuit Court of Appeals affirmed petitioner's convictions and dismissed the portion of his appeal challenging his sentence, based on the waiver of

---

Distribute Narcotics, in violation of 21 U.S.C. §846, but this appears to be an error by the Clerk's office. It contains only seventeen counts and a "Grand Jury Findings," summarizing the drug amounts involved in Counts 1-16. See Dkt.# 271 at 19.

[7] This count was originally charged against petitioner in a one-count Indictment returned on June 1, 2004, by a Federal Grand Jury for the Northern District of West Virginia, in Case No. 3:04cr39, charging him with a violation of 8 U.S.C. §1326. This charge was incorporated into the (second) superseding indictment in the instant case, and Case No. 3:04cr39 was dismissed without prejudice on October 19, 2004. (Dkt.# 307, ¶24 at 9).

[8] "On May 13, 2004 . . . [petitioner] an alien, who had been convicted of an aggravated felony offense, namely possession for sale of heroin in Orange County, California, was found within the United States after having been deported in November 1998 and again in August 2001." Dkt.# 307, ¶43 at 12.

[9] The plea agreement contained a waiver of appellate and collateral attack rights as to any sentence within the maximum provided in the statute of conviction, or in the manner in which the sentence was determined on any ground whatever. Dkt.# 275, ¶19 at 4. The maximum sentence petitioner could have received for Count Eight was a period of 5 - 40 years, a fine of $2,000,000, and a term of supervised release of at least 4 years, and for Count Seventeen, a maximum term of imprisonment of 20 years, a fine of $250,000, and a 3-year term of supervised release. Id., ¶2 at 2.

[10] A review of the BOP's online Inmate Locator reveals that petitioner is presently 37 years old with a projected release date of October 16, 2036.

4

appellate rights in his plea agreement.[11] His petition for rehearing was denied on September 18, 2007. *Certiorari* was denied on February 19, 2008.[12]

**C. Federal Habeas Corpus**

    **1) First Federal Habeas**

Petitioner filed his first motion to vacate pursuant to 28 U.S.C. §2255 on June 13, 2005, five days after filing his Notice of Appeal. (Dkt.# 313). In it, he alleged that his guilty plea was involuntary and unknowing, and that counsel was ineffective. The motion was dismissed without prejudice as premature on May 4, 2006. (Dkt.# 343).

    **2) Motion Pursuant to 28 U.S.C. §2244**

On April 2, 2014, petitioner filed a motion pursuant to 28 U.S.C. §2244 in the Fourth Circuit Court of Appeals, seeking authorization to file a second or successive 28 U.S.C. §2255 motion. By Order entered April 17, 2014, the motion was denied as unnecessary, because since his first §2255 motion was dismissed without prejudice as premature, it did not qualify as a first §2255 motion.[13]

    **3) The Instant Numerically Second, but not Successive Federal Habeas**

Petitioner's claims,[14] reworded and reordered here in an attempt to provide clarity and brevity, appear to allege that

1) his original counsel, Keith Wheaton,[15] was ineffective at the Rule 11 plea hearing for failing to enter an objection:

---

[11] (4th Cir. Dkt.# 61)(05-4618).

[12] (4th Cir. Dkt.# 83)(05-4618).

[13] (4th Cir. Dkt.# 5)(14-184).

[14] Petitioner's claims, while not quite incoherent, are extremely repetitive, rambling, disjointed and difficult to discern; portions of his massive pleadings (168 pages with attachments) appear to be parts of other documents randomly appended, with inconsistent numeration, in no particular order, including what appears to be copies of a portion of a hand-written appellate brief, wherein he repeatedly refers to himself as "appellant." A review of the 4th Circuit's docket on his direct appeal indicates that while represented by appellate counsel, petitioner also filed a *pro se* supplemental brief; presumably these pages are a portion of that document. However, because the document is not hyperlinked on the 4th Circuit's docket, this cannot be confirmed. See 4th Circ. No. 05-4618, Dkt.# 50 and 57.

5

a) to assert that the elements of the affirmative act requirement of aiding and abetting a drug deal, and the use/carrying of a firearm, charged and used to enhance petitioner's sentence on the 18 U.S.C. §2 violation, require intent as to the whole crime;

b) to assert that whether a defendant had advanced knowledge that one of his confederates will use/carry a gun must be proven with clear and convincing evidence;

c) to the Notice of Enhancements attributed to petitioner, based on his prior convictions, and to challenge whether a past conviction for simple possession is a crime a court can use for an enhancement;

d) to petitioner's plea to a "convoluted, vague and fatally defective plea agreement" that charged overt acts not attributed to petitioner and failed to allege a forfeiture of the gun attributed to petitioner;

e) to challenge the weakness of evidence against petitioner, where no government witness provided any testimony showing any transactions or dealings with petitioner;

f) to Count 17, and to move to dismiss it, based on "prior attorneys [sic] and district courts [sic] failure to properly advise" petitioner of the consequences that his guilty plea and conviction[16] would have on his immigration status; and further,

2) failed to advise petitioner that any fact that increased the penalty for a crime is also an element that must be charged and alleged in the indictment, submitted to the Grand Jury and proved beyond a reasonable doubt, including the drug quantity.

3) Newly-appointed counsel, Amanda Lewis, was ineffective for failing to cross-examine Attorney Wheaton about his investigation by the West Virginia State Bar regarding the time frame between November 2003 – November 2004, constituting "actual conflict" with his duties as petitioner's counsel.[17]

4) Appellate counsel, Amanda Lewis,[18] was ineffective on direct appeal "when counsel's ineffectiveness is apparent on the record."

---

[15] Petitioner asserts Attorney Wheaton was "suspended and disbarred." Dkt.# 435 at 10. Wheaton filed a motion for leave to withdraw on November 17, 2004, one month after petitioner's plea hearing, because his license had been revoked. Dkt.# 278. On December 7, 2004, Attorney Amanda Lewis was appointed to replace Wheaton. Dkt.# 281.

[16] Here, petitioner appears to be attempting to raise a convoluted claim under Padilla v. Kentucky, 559 U.S. 356 (2010). This claim of ineffectiveness, contained within the allegation of Attorney Wheaton's ineffectiveness, appears to be directed at previous defense counsel in Orange County California, for failing to advise petitioner that his aggravated felony conviction for heroin possession in that jurisdiction would result in his November, 1998 deportation.

[17] Petitioner's first §2255 motion alleges that Wheaton was engaged in "illegal activities on his own behalf" and that he was "taking money from people and not representing them properly." (Dkt.# 313 at 4). He does not allege that Wheaton took money from him without representing him properly.

[18] The undersigned notes that despite petitioner's allegations of Attorney Lewis' ineffectiveness, he has requested that Attorney Lewis be appointed to represent him here. See Dkt.# 435 at 12 and Dkt.# 438.

5) The trial court failed to advise petitioner that any fact that increased the penalty for a crime is also an element that must be charged and alleged in the indictment, submitted to the Grand Jury and proved beyond a reasonable doubt, including the drug quantity.

6) The trial court failed to determine whether a past conviction for simple possession can be used for an enhancement.

7) The trial court erred by:

    a) denying petitioner's motion to withdraw his guilty plea.

    b) denying petitioner's verbal motion to reconsider the denial of his request to withdraw his plea;

    c) denying petitioner's last motion to continue his sentencing date until he could obtain additional evidence;

    d) failing to grant petitioner's motions for downward departure;

    e) failing to require that sentencing enhancements be proven with clear and convincing evidence; and

    f) imposing an excessive sentence, by charging petitioner with weapon possession; with being the manager, leader, or organizer; and by denying him a reduction for acceptance of responsibility.

8) The trial court's decision to impose a life sentence beyond the statutory maximum violates the strict language of congressional intent.

9) Petitioner's life sentence under the post-Booker decision runs afoul of the *ex post facto* clause.

10) Petitioner's prior conviction under a state generic definition for an aggravated felony does not qualify for a sentencing enhancement.

11) Petitioner's prior conviction, used to enhance his total term of imprisonment to life in prison, violates the Fifth and Sixth Amendment.

Petitioner also alleges that the timeliness of his motion is valid pursuant to 28 U.S.C. §2255(f)(3) because of "[n]ewly recognized statutorily [sic] ruling in Rosemond v. United States . . . to wit: aiding and abetting (18 USC §2)."[19]

---

[19] Dkt.# 435 at 12.

As relief, petitioner requests that his conviction be vacated and his sentence set aside; that he be permitted to withdraw his plea; and that his case be remanded for a new plea and re-sentencing to conform with "New Precedent and Rulings in light of Rosemond v. United States; and Alleyne v. United States." Elsewhere, petitioner asks that the court "grant his appeal by the way of 28 USC §2255 Without Day [sic]."[20]

## II. Analysis

Although *pro se* petitions are to be liberally construed as set forth in Haines v. Kerner, 404 U.S. 519 (1972), habeas petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849 (1994). "[N]otice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." Blackledge v. Allison, 431 U.S. 63, 75, n. 7 (1977) (internal quotations omitted). A habeas petitioner must come forth with evidence that a claim has merit. Nickerson v. Lee, 971 F. 2d 1125, 1136 (4th Cir. 1992), cert. denied, 507 U.S. 923 (1993). Unsupported, conclusory allegations do not entitle a habeas petitioner to relief. Id.

In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted, establishing a one-year limitation period within which to file any federal habeas corpus motion. 28 U.S.C. §2255.

> The limitation period shall run from the last of:
>
> 1. The date on which the judgment of conviction becomes final;
>
> 2. The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> 3. The date on which the right was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;[21] or

---

[20] Dkt.# 435-17.

[21] The one-year statute of limitation period under this subsection runs from the date on which the Supreme Court initially recognized the right asserted, not from the date on which the right asserted was made retroactive. Dodd v. United States, 545 U.S. 353 (2005).

> 4. The date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255(f).

As an initial starting point, the undersigned has reviewed this case to determine its general timeliness under 28 U.S.C. §2255(f)(1). In general, to satisfy the statute of limitations, Cardena must have filed his motion within one year from "the date on which [his] judgment of conviction bec[ame] final." 28 U.S.C. §2255(f)(1). The Fourth Circuit has determined that a federal prisoner's conviction becomes final on the date upon which he fails to pursue further direct appellate review. United States v. Sanders, 247 F.3d 139, 142 (4th Cir. 2001). Petitioner's appeal was denied on May 16, 2007. However, because petitioner pursued a writ of *certiorari,* his conviction did not become "final" pursuant to §2255(f)(1) until *certiorari* was denied, on February 19, 2008. See Supreme Ct. Rule 13.3; Clay v. United States, 537 U.S. 522, 527 (2003). Accordingly, petitioner had until February 19, 2009, to timely file his §2255 motion, but his motion was not filed until July 14, 2014. Because petitioner filed his motion after the one-year statute of limitations ran, the undersigned finds that the motion is untimely under subsection (1).

Here, because petitioner does not allege that his motion is based on new facts, subsection (4) is inapplicable. Instead, petitioner alleges that under subsection (2), he is entitled to equitable tolling due to "extraordinary circumstances" beyond his control, and under subsection (3), his motion is based on a right initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review. Each of petitioner's contentions will be addressed in turn.

Equitable tolling is available only in "those rare instances where - due to circumstances external to the party's own conduct - it would be unconscionable to enforce the limitation period against the party and gross injustice would result." United States v. Sosa, 364 F.3d 507, 512, (4th Cir. 2004) *quoting* Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) *(en banc)* (quotation marks omitted), *cert. denied,* 541 U.S. 905 (2004). In order to be entitled to equitable tolling, petitioner bears the

burden of presenting evidence which shows that he was prevented from timely filing his §2255 petition because of circumstances beyond his control, or external to his own conduct, and that it would be unconscionable, or that a gross injustice would occur, if the limitation were enforced. Id.

Equitable tolling is generally reserved for those instances where some wrongful conduct of the opposing party (in this case, the Government) prevented a defendant from filing a petition, or extraordinary circumstances beyond the defendant's control made it impossible to timely file the claim. United States v. Anderson, No. 04-0353, 2012 WL 1594156, at *2 (D.S.C. May 7, 2012), quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000). Whether a circumstance warrants equitable tolling is made on a case-by-case basis. Holland v. Florida, 130 S.Ct. 2549, 2563 (2010).

In his Hill v. Braxton response, petitioner argues that he is entitled to tolling because the BOP caused delays in the preparation of his petition by subjecting him to "a number of prison transfers and no proper place for me to receive my Legal Materials or have Access to a Library[.]"[22] He further argues that he "communicated with the court as too [sic] the delay/denial of library/transfer of numerous housing/and without Access to a library in the preparing of his 2255 Habeas for Regress."[23]

When alleging denial of access to the courts, a prisoner must make specific allegations and must also identify an actual injury resulting from official conduct. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Strickler v. Waters, 989 F.2d 1375, 1383 – 84 (4th Cir. 1993) (holding that, to establish claim of denial of access to courts, prisoner must allege actual injury or specific harm resulting from denial). An inmate cannot establish the relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Lewis v. Casey, 518 U.S. 343, 351 (1996).

---

[22] Dkt.# 454 at 1.

[23] Id. at 2.

A review of the docket reflects that on October 14, 2009, petitioner wrote to the Clerk of Court, requesting a copy of his docket sheet "so I can purchased [sic] some documents therefrom."[24] The letter, which makes no mention of the BOP delaying or denying law library access, or of frequent institutional transfers interfering with the preparation of a §2255 motion, was received and docketed on October 19, 2009, and a copy of the docket sheet was sent to him that day. Four years and almost one month later, on November 15, 2013, petitioner filed a Motion for Copies/Production of Transcripts, stating that he needed them "to further aggresively [sic] litigate and challenge his illegal sentence and conviction in connection with ineffective assistance of Defense Counsels [sic] in light of U.S.Supreme [sic] Court recent decision in Alleyene > Descamp >> Peugh >>> and United States v. Davis [sic] . . . in the Nature of FRCP 60(b)[.]"[25] The motion makes no mention of the BOP's hindering his law library access, or subjecting him to frequent transfers, thereby interfering with his preparation of a §2255 motion. By Order entered November 18, 2013, petitioner's motion was denied without prejudice as premature; however, he was specifically advised that he could resubmit his request after filing an action under 28 U.S.C. §2255.[26]

Instead of filing a §2255 motion, on March 28, 2014, nearly four and a half months later, petitioner filed a Second Motion for Copies/Production of Transcripts and Orders, advising that he had a §2244 motion for leave to file a second/successive §2255 motion to vacate pending in the Fourth Circuit Court of Appeals, and needed the documents to litigate his post-conviction motion.[27] This motion likewise makes no mention of the BOP's hindering petitioner's law library access, or subjecting him to frequent transfers, such that he was prevented from preparing his §2255 motion. By Order entered on April 2, 2014, petitioner's second motion for copies and transcripts was granted; the

---

[24] Dkt.# 422.

[25] Dkt.# 425.

[26] Dkt.# 427.

[27] Dkt.# 429.

copies were sent to him that day.[28] Nearly three and a half months later, on July 14, 2014, petitioner filed his motion to vacate.

In summary, while petitioner makes vague, general, conclusory assertions that the BOP somehow impeded his filing by making the law library inaccessible to him, transferring him, and/or giving him insufficient access to his legal materials for over almost 5 ½ years, his claims have no support in the record. None of petitioner's efforts to begin gathering material to prepare his motion occurred until eight months after the one-year limitation period had already expired. Further, petitioner does not allege any specific facts or offer any evidence as to how often he was transferred; what he did in between the transfers to attempt to prepare a §2255 motion; what steps he took; the lengths he went to; or the diligence he otherwise exercised during the time he claims deprivation of law library access or access to his legal materials. Moreover, he completely fails to explain why, when he finally received a copy of the docket sheet, he still waited *over four years* to even request anything from it, let alone why he continued to delay, after being specifically advised he could not get the transcripts and copies until he actually filed a §2255 motion. Further, despite petitioner's present claims to the contrary, it is apparent that he never advised the court that he was being prevented from timely filing a §2255 motion by any action of the BOP.

Accordingly, petitioner's argument falls far short of proving he was prevented by any extraordinary circumstance beyond his control, let alone any impediment by the government, from filing his petition; nor does it appear that he has shown the due diligence necessary to consider extending the filing time limits under subsection (2).

Next, petitioner claims that <u>Rosemond</u> and/or <u>Alleyne</u>[29] render his §2255 motion timely pursuant to 28 U.S.C. §2255(f)(3). The undersigned finds that subsection (3) does not apply because

---

[28] Dkt.# 431 and 432.

Alleyne is not retroactively applicable to cases on collateral review. 133 S.Ct. 2151 (2013). Pursuant to §2255(f)(3), the limitation period for a petitioner to file a §2255 motion is one year from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Alleyne held that "facts that increase the mandatory minimum sentence are therefore elements and must be submitted to the jury and found beyond a reasonable doubt." 133 S.Ct. at 2158. In the Alleyne opinion, the Supreme Court did not declare this new rule to be retroactive on collateral attack. 133 S.Ct. 2151 (2013); see also United States v. Stewart, 540 Fed. Appx. 171 (4th Cir. Sept. 27, 2013) (per curiam); In re Kemper, 735 F.3d 211 (5th Cir. 2013); In re Payne, 733 F.3d 1027 (10th Cir. 2013); Simpson v. United States, No. 13-2373, 2013 WL 3455876, at *1 (7th Cir. July 10, 2013). In addition to the Fourth, Fifth, Seventh and Tenth Circuits, a number of district courts in this circuit and across the country have determined that Alleyne should not be applied retroactively for the purposes of collateral attack. See e.g., Newlen v. United States, 2014 WL 1787779 (N.D. W.Va. May 5, 2014); Puzey v. United States, 2014 WL 1761615 (N.D. W.Va. Apr. 30, 2014); Grantham v. United States, 2014 WL 296937 (N.D. W.Va. Jan. 27, 2014); Williams v. United States, No. 5:13-CV-00108, 2013 WL 4083274, at *2 (W.D.N.C. August 13, 2013); Smith v. Holland, No. 13-147-KKC, 2013 WL 4735583, at *4 (E.D. Ky. Sept. 3, 2013); Smith v. Federal Bureau of Prisons, No. 9:13–384–RMG, 2013 WL 833050 (D.S.C. July 23, 2013).

Additionally, Alleyne expanded upon the holding in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000), which found that facts increasing the statutory *maximum* must be submitted to the jury and proved beyond a reasonable doubt. 530 U.S. at 490 (emphasis added). According to the Seventh Circuit, the "Justices have decided that other rules based on Apprendi do not apply retroactively on collateral review. This implies that the Court will not declare Alleyne to be

---

[29] Nowhere does petitioner actually provide any argument as to Alleyne; he merely references it in one of his four prayers for relief, randomly distributed throughout his motion and memorandum in support. Dkt.# 435 at 16; Dkt.# 435-1 at 13; Dkt.# 435-17 at 11; and Dkt.# 435-17 at 13.

13

retroactive." Simpson, 2013 WL 3455876, at *1 (*citing* Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519 (2004)).

Next, despite petitioner's unsupported opinion that because Rosemond "involves a question of statutory interpretation . . . this decision is automatically re-troactively [sic] applicable because it redefines what is required in order to be considered an aidor or abettor[,]" petitioner has provided no authority to show that Rosemond has been found to be retroactively applicable to cases on collateral review. To the contrary, "a new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive," Tyler v. Cain, 533 U.S. 656, 663 (2001). Rosemond says nothing about its application on collateral review. Moreover, to date, courts that have considered this question have found Rosemond is *not* retroactively applicable to cases on collateral review. See, e.g., Linton v. United States, 2014 WL 2964074 at 1 (D. Md. June 27, 2014); Moses v. United States, 2014 U.S. Dist. LEXIS 175269 (D. Md. Dec. 19, 2014); Whitener v. United States, 2014 WL 6808789 at *2 (W.D.N.C. Dec. 2, 2014); Vazquez-Castro v United States, 2014 WL5302972 at 7 (D.P.R. Sept. 30, 2014); Gentile v. Fox, 2014 WL 3896065, at 8 (C.D. Cal. July 11, 2014) *report and recommendation adopted,* 2014 WL 3896071 (C.D. Cal. Aug. 8, 2014); In re Spring, No. 15-4007 (10th Cir. Feb. 14, 2015) (authorization to file a second or successive 28 U.S.C. §2255 motion to vacate denied); Taniguchi v. Butler, No. 14-CV-120, 2014 WL 5063748 *5 (E.D. Ky. October 8, 2014); Moreno v. Snyder-Morse, Civil Action No. 14-CV-106, 2015 U.S. Dist. LEXIS 1543 at *4 (E.D. Ky. Jan. 6, 2015); Rainwater v. Werlich, No. 14–CV–994, 2014 WL 4273631, *2 (D. La. Aug. 29, 2014); Rodriguez-Pena v. Werlich, No. 14-CV-994, 2014 U.S. Dist. LEXIS 121483, 2014 WL 4273631, *2 (D .La. Aug. 29, 2014); Whitted v. Coakley, No. 4:14-CV-764, 2014 U.S. Dist. LEXIS 156697 (N.D. Ohio Nov. 5, 2014); Mendoza v. Copenhaver, No. 1:14-CV-2010, 2014 WL 7336223 (E.D. Cal. Dec. 2, 2014) *report and recommendation adopted,* No. 1:14-CV-2010, (Dkt.# 6)(E.D. Cal. Feb. 4, 2015); United States v. Reid, No. 1:03-CR-12-2, 2014 U.S. Dist. LEXIS 78745 (W.D.

14

Va. June 10, 2014); Bey v. Hollenback, No. 5:14-HC-2016, 2015 U.S. Dist. LEXIS 25737 (E.D.N.C. Feb. 27, 2015).

Accordingly, petitioner has failed to show his motion is timely under subsection (3), and the motion should be dismissed.

### III. Recommendation

For the foregoing reasons, the undersigned recommends that the Court enter an Order **DENYING** Romano' §2255 motion as untimely and **DISMISSING** the case with prejudice.

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, **or by March 25, 2015**, any party may file with the Clerk of the Court written objections identifying those portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: March 11, 2015

/s/ James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE